BARTON, (PRENTISS v.) See Case No. 11,384.

---

## Case No. 1,085.

### BARTON et al. v. TOWER.

[5 Law Rep. 214; 1 Pa. Law J. 209; 1 N. Y. Leg. Obs. 8.]

District Court, N. D. New York. July Term, 1842.

BANKRUPTCY — PETITION BY CREDITOR HOLDING CLAIM NOT DUE—ASSIGNMENT BY TRADER—ACT OF BANKRUPTCY.

1. It is not a valid objection to a petition in invitum, by a creditor, that his claim is not yet due.

[Cited in Linn v. Smith, Case No. 8,375; In re Alexander, Id. 161.]

2. An assignment by a trader of his property, whether made in contemplation of bankruptcy or for the purpose of giving a preference, or not, is void, and, of itself, an act of bankruptcy.

[Cited in Gassett v. Morse, Case No. 5,264.]

3. Where two partners made an assignment of their property, with a direction, that it should be distributed among their creditors by the as-

signment, "in the same manner as if the same were in the hands of an assignee under the bankrupt act of the United States, by virtue of proceedings duly had in bankruptcy," it was *held*, that such assignment was an act of bankruptcy, and was void.

In bankruptcy. This was a petition by Eliphas B. Barton and William Osborn, that Julius Tower be declared a bankrupt. The petition set forth, that Tower was a merchant; that he owed not less than $2000; that he owed to each of the petitioning creditors, severally, not less than $500, to wit, the sum of one thousand dollars besides interest, for which they severally held his promissory note, made jointly with him and other persons. Both of these notes were stated to have been made before the commission of the acts of bankruptcy charged, and one of them was due, the other being payable in September next. The petition charged Tower with having, on the second and fifth of April last, executed three several fraudulent conveyances of certain valuable real property, and with having also, on the 30th day of the same month, in conjunction with Charlemagne Tower, executed a fraudulent conveyance or assignment of all his property for the benefit of his creditors. On the day appointed for the hearing, Tower filed his objection, under oath, to a decree of bankruptcy. He expressly admitted all the facts set forth in the petition, except that he denied that the several conveyances and assignment mentioned in the petition were fraudulent; the same having as he alleged, been executed in good faith. Annexed to the objections was a copy of the general assignment, which purported to be of all the joint property of Julius and Charlemagne Tower, as ex-partners in business, under the name and style of Reuben Tower & Sons, and of all the separate property of each of them for the benefit of all the creditors without preference. There was a direction in the deed of assignment, that all their property and the proceeds thereof should be divided and distributed among their creditors by the assignees, "in the same manner as if the same were in the hands of an assignee under the bankrupt act of the United States, by virtue of proceedings duly had in bankruptcy."

M. S. Myers, for petitioning creditors.

Mr. Bacon, for the debtor.

CONKLING, District Judge. One of the objections urged against a decree of bankruptcy in this case is, that the debt of one of the petitioning creditors is not yet due. Whatever doubt may have formerly been entertained in this court, in deference to decisions under the former bankrupt law of England, whether a creditor whose debt was not yet due, could become a petitioning creditor, I cannot now perceive any valid ground for such doubt. There is nothing in the language of the act which appears to me to require such a construction. The act declares that "all persons being merchants, &c., owing debts to the amount of not less than $2000, shall be liable to become bankrupts within the true intent and meaning of this act and may, upon the petition of one or more of their creditors, to whom they owe debts, amounting in the whole to not less than $500, to the appropriate court, be so declared," &c. A debt is not the less owing because it is not yet due; and my conviction is strong, that the legislature did not intend, that the act should receive the narrow construction contended for by the counsel for the debtor. The phraseology of the act in relation to the debt of not less than $500 to the petitioning creditor is the same in this respect, as that used in relation to the aggregate amount of debts, which the debtor must owe, of not less than $2000, and it will not be pretended, that these debts must be actually due. But at any rate the objection is inapplicable to the other petitioning creditor; whose debt alone is more than sufficient, and I think it is a mistake to suppose, that a petition by two creditors, one of whom would be entitled to petition alone, would be vitiated by the insufficiency of the debt claimed by the other.

It is in the next place objected, that no decree of bankruptcy can now be made, because the debtor has denied the fraud charged against him. There are three descriptions of fraudulent conveyances, assignments, &c., which bring a merchant, banker, factor, &c. within the operation of the first section of the bankrupt act. 1. Such as are fraudulent, or against the common law, or the provision of such English statutes as have been incorporated into the jurisprudence of this country; 2, (as I am now well satisfied, whatever doubts I may have originally entertained,) such as are voluntarily made, in contemplation of bankruptcy, and for the purpose of giving a preference to one or more of the creditors of the debtor over his other creditors. The making of a conveyance of this description has always been held to be an act of bankruptcy under the English bankrupt law, as being contrary to the policy of the law, without any express words in the statute. But in our act they are expressly declared to be "utterly void, and a fraud upon this act." 3. Assignments of all the effects of the debtor, whether upon trust for the benefit of his creditors or not, on the ground, first, that the debtor necessarily deprives himself, by such an act, of the power of carrying on his trade, and secondly, that he endeavors to put his property under a course of application and distribution among his creditors, different from that, which would take place under the bankrupt law. It is unnecessary to cite authorities to show, that such an assignment is an act of bankruptcy in England, because it has been a well settled and familiar rule. It is a sound and useful rule; and there is nothing whatever in the language of our act, which re-

quires a different construction in this respect. In fact, the provision of the act in question is copied almost verbatim from the correspondent provision in the third section of the act of 6 Geo. IV. c. 16. With regard to the three conveyances of specific property, part of the debtor's property, which he is charged with having made on the second and fifth of April, although from the circumstances of the case, and especially from the fact of their having so soon been followed by an assignment of all the remaining effects of the debtor, the inference is strong, that they were made in contemplation of bankruptcy, and for the purpose of giving an unlawful preference; yet, inasmuch as they are denied to have been fraudulent, it cannot be said that they certainly carry with them intrinsic evidence of fraud. But with respect to the general assignment made on the 30th of April last, I entertain no doubt, that, according to the express admission of the debtor, it is an act of bankruptcy.

All assignments by a debtor, though but of a part of his effects, if voluntarily made in contemplation of bankruptcy, and for the purpose of giving a preference, whatever may have been the antecedent law of the state, when they are made, are, by virtue of the bankrupt act, utterly void; and all assignments by a merchant, banker, factor, etc., who owes not less than $2000, of all his property, or as was said by Lord Mansfield in the case of Hooper v. Smith, 1 W. Bl. 442. of "so much of his stock in trade as to disable him from being a trader," whether made in contemplation of bankruptcy or for the purpose of giving a preference or not, are void, and for themselves acts of bankruptcy.

A decree of bankruptcy must therefore be entered in this case; and also in the case of the same petitioner against Charlemagne Tower, which depends upon exactly the same principles.